FIRST INVESTMENT COMPANY,
Plaintiff and Appellant,

v.

Robert K. ANDERSEN and Donna W.
Andersen, Defendants and
Respondents.

No. 16574.

Supreme Court of Utah.

Oct. 30, 1980.

Donald J. Eyre, Jr., Udell R. Jensen, Nephi, for plaintiff and appellant.

James P. McCune, Provo, for defendants and respondents.

MAUGHAN, Justice:

Plaintiff, the transferee of the payee of two promissory notes, initiated this action to recover the unpaid balance from the makers, the defendants. The trial court found the notes were not negotiable instruments; plaintiff was not a holder in due course; and there was a failure of consideration on the part of the payee. Defendants were awarded a judgment of no cause of action. Plaintiff appeals therefrom. The judgment of the trial court is affirmed; costs are awarded to defendants.

On September 6, 1965, defendants entered into a franchise agreement with Great Lakes Nursery Corporation, hereinafter identified as the "Nursery," a Wisconsin corporation. Defendants, as the franchisees, were to grow and sell nursery stock and Christmas trees. The Nursery was to provide and to deliver 65,000 trees as planting stock for the purchase price of $9,500.00. The franchisor, the Nursery, under the agreement was to provide the number, size, and variety therein specified, as well as to furnish replanting stock; chemicals, fertilizers, and other articles to be used in the production and sale of the trees; to root prune the trees; to provide technical training and supervision necessary for the planting, sheering, pruning, marketing and sale and other technical information affecting the growth, production, harvest and sale of the trees.

Contemporaneously with the franchise agreement, the defendants, as makers, executed two promissory notes, with the Nursery as payee; each in the amount of $6,412.00. The note recited:

"For value received, Robert Andersen of Nephi, Utah, promises to pay to Great Lakes Nursery Corp. at Waukesha, Wisconsin six thousand four hundred twelve dollars payable as follows: $100 per month beginning Oct. 1, 1965 for 24 months and then $111.30 per month for 36 months including interest computed at 7% per annum added to the principal amount of $4,750.00.

This note may be prepaid with adjustment of interest at any time.

If this note is in default, the holder, after 60 days written notice to the undersigned, may declare the face of the note due and payable if the default is not remedied within 60 days after notice.

Robert Andersen

Franchisee

Donna Andersen

This note is received in full payment for the trees described in Article III–A (Planting Stock) of the Santa's Forest Franchise Agreement.

Great Lakes Nursery Corporation
William Skaife"

Prior to the delivery of any trees to defendants, the Nursery transferred the note to plaintiff on September 20, 1965. The following was written on the reverse side of the note:

"For value received, the undersigned does hereby endorse, sell, assign and transfer with full recourse the within note and mortgage to First Investment Company or order, and authorize it to do every act and thing necessary to collect and discharge the same.

September 20, 1965.

William Skaife

William Skaife

Great Lakes Nursery Corp."

Defendants were notified by plaintiff of the transfer of the note by a letter dated September 28, 1965. Defendants made payments of $1,350.00 on each of these notes between April 2, 1966, and January 7, 1967. In response to plaintiff's demand, the Nursery made payments on each note in the sum of $1,033.30 as of August, 1968. In December, 1969, plaintiff applied $1,780.80 on each of the notes from a trust fund established under agreements between the plaintiff and the Nursery in 1964 and 1965.[1]

During 1967, defendants made no further payments on their notes for the reason that the Nursery had failed to perform in accordance with the franchise agreement. In their answer, defendants pleaded a failure of consideration as an affirmative defense. The trial court found there was a failure of consideration on the part of the Nursery for the following reasons: It did not furnish the number, size and variety of trees specified in the agreement; it did not furnish the replanting stock; it did not furnish any chemicals, fertilizers and other articles; it did not root prune the trees; and it did not provide technical training, supervision, and information. There is substantial evidence in the record to sustain the findings.

Prior to discussing plaintiff's points on appeal, it should be observed that the Uniform Negotiable Instruments Act, Title 44, U.C.A.1953, is controlling in regard to the issues, since the notes were executed and transferred prior to December 31, 1965, the effective date of the Uniform Commercial Code (70A–10–101, U.C.A.1953, as amended) and the time of repeal of the N.I.L. (70A–10–102(1)).

Section 70A–10–102(2), U.C.A.1953, as amended, provides:

"Transactions validly entered into before the effective date specified in section 70A–10–101 and the rights, duties, and interests flowing from them remain valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law amended or repealed by this act as though such repeal or amendment had not occurred."

Hereafter, all statutory references are to the currently repealed N.I.L., Title 44, U.C.A.1953, unless otherwise indicated.

On appeal, plaintiff contends it was a holder in due course, and as such held the instrument free of any defenses available to prior parties among themselves, § 44–1–58. Defendants prevailed before the trial court on the ground the notes were not negotiable, and failure of consideration was a defense against any person not a holder in due course, § 44–1–29.

The primary issue is whether the two promissory notes were negotiable. Section 44–3–1 provides:

"A negotiable promissory note within the meaning of this title is an unconditional promise in writing made by one person to another, signed by the maker, engaging to pay on demand, or at a fixed or determinable future time, a sum certain in money, *to order or to bearer....*" [Emphasis added.]

Section 44–1–1 provides:

"An instrument to be negotiable must conform to the following requirements:

\*     \*     \*     \*     \*     \*

(4) It must be payable to order or to bearer; ..."

Section 44–1–9 provides:

"An instrument is payable to order where it is drawn payable to the order of a specified person, or to him or his order...."

■ Under both the N.I.L. and the U.C.C. (70A–3–104(1)(d)), one of the requirements to qualify a writing as a negotiable instrument is that it contain the time-honored "words of negotiability," such as

---

1. Before the trial court, plaintiff refused to give defendants credit for the payments made by the Nursery and from the trust fund and sought an unpaid balance of $3,847.39 on the principal of each note plus interest.

"pay to the order" or "pay to the bearer."[2] The mere promise to pay, absent the magic words "payable to order or to bearer" renders the note nonnegotiable, and the liability is determined as a matter of simple contract law.[3]

■ In the instant case, the notes were payable simply to the payee, and were not payable to the order of the payee or to the payee or its order and were thus not negotiable instruments. Since the notes were not negotiable, the transfer by the Nursery to plaintiff must be deemed an assignment, and the assignee (plaintiff) stood in the shoes of the assignor and took subject to existing equities and defense.[4]

■ Significantly, the trial court found that the notes and franchise agreement constituted one integrated contract. This finding is substantiated by the recital concerning consideration in the note, and the absence of words of negotiability. Where there is a failure of consideration under a bilateral contract consisting of a breach by the assignor, such failure is a good defense to an action by the assignee whether it occurred before or after the assignment. Such a defense, although acquired after notice of the assignment, is based on a right of defendant inherent in the contract by its terms. Therefore, where payments under an executory contract are assigned, the debtor may set up failure of the assignor to fulfill his part of the contract though such failure occurs after the assignment, for the assignor cannot give another a larger right than he has himself.[5] The trial court did not err in its ruling that failure of consideration constituted a valid defense to plaintiff's action.

■ Plaintiff contends the trial court erred in denying its motion to amend its pleadings under Rule 15(b), U.R.C.P., so that it might plead a cause of action for unjust enrichment. This contention is without merit, for a survey of the record reveals this issue was not tried by the express or implied consent of the parties, a requisite of Rule 15(b), U.R.C.P. Mr. Andersen, one of the defendants, testified that in 1975, which was ten years after the date of the agreement, there were 8,000 to 10,000 trees still surviving. He further testified each tree had the approximate value of $2.00. Defense counsel attempted to elicit testimony as to the expenditures, such as labor, which defendants had devoted to the operation in an attempt to make it a success; plaintiff objected and was sustained by the trial court. Subsequent to the trial, plaintiff claimed the testimony of Mr. Andersen was sufficient to constitute a trial of the issue of unjust enrichment, and the pleadings should be amended to conform thereto.

■ On appeal, plaintiff contends the defendants have derived a $20,000 benefit

---

2. *Hall v. Westmoreland, Hall & Bryan*, 123 Ga. App. 809, 182 S.E.2d 539, 541 (1971); *Cobb Bank & Trust Company v. American Manufacturers Mutual Insurance Company*, D.C.Ga., 459 F.Supp. 328, 333 (1978); *Central States Southeast and Southwest Areas, Health and Welfare Fund v. Pitman*, 66 Ill.App.3d 300, 23 Ill.Dec. 26, 383 N.E.2d 793, 795 (1978).

3. *von Frank v. Hershey National Bank*, 269 Md. 138, 306 A.2d 207, 210–211 (1973); 11 Am. Jur.2d, Bills and Notes, § 105, p. 144, § 108, p. 147; 58 A.L.R. 1005, Anno.: When instrument deemed payable to order within Uniform Negotiable Instruments Act. It should be observed that if the U.C.C. were applicable, the notes in the instant case would be within the purview of § 70A–3–805, which provides: "This chapter applies to any instrument whose terms do not preclude transfer and which is otherwise negotiable within this chapter but which is not payable to order or to bearer, except that there can

be no holder in due course of such an instrument." Under 70A–3–408, failure of consideration is a defense against any person not having the rights of a holder in due course. However, in certain aspects a "nonnegotiable instrument" which is within § 70A–3–805 is not treated as a simple contract but as a negotiable instrument, except there can be no holder in due course and thus the provisions in that regard cannot apply. See 3 Anderson, Uniform Commercial Code (2d Ed.), § 3–805:1, pp. 154–155.

4. 2 Anderson, Uniform Commercial Code (2d Ed.), § 3–104:3, pp. 597–598; 11 Am.Jur.2d, Bills and Notes, § 3, p. 33.

5. *Bliss v. California Co-op Producers*, 30 Cal.2d 240, 181 P.2d 369, 375, 170 A.L.R. 1009 (1947); *Cooke v. Sinopoulo*, 194 Okl. 352, 151 P.2d 791, 794 (1944).

for which they have paid only $1,350.00, and defendants have been unjustly enriched. Plaintiff correctly concedes the basis of liability in quasi contract is the benefit conferred upon defendant and not the detriment incurred by plaintiff. Plaintiff failed to adduce any evidence of the value of the surviving trees at the time of delivery to defendants, and plaintiff objected to any evidence concerning defendants' expenses in caring for the trees over a ten year period, so there was no evidentiary basis to determine whether a benefit had, in fact, been conferred on defendants. Under any circumstances, a theory of unjust enrichment would be inappropriate in this case, for the matter of consideration was directly in issue. Since the notes were not negotiable instruments, there was no presumption that they were issued for a valuable consideration.[6] Plaintiff, as assignee of the notes, had the burden to prove they were issued for a consideration from the Nursery. Plaintiff presented receipts acknowledging delivery of the trees, and then defendants sustained their burden, proving a failure of consideration, as found by the trial court. At this juncture, to recover any amount in excess of the payments received, plaintiff had the burden of proof as to the value of the consideration received by defendants from the Nursery.[7] No evidence was adduced as to the value of the surviving trees at the time of delivery from the Nursery; and, therefore, plaintiff has failed to establish the value of the consideration received by defendants for their issuance of the notes.

■ Finally, plaintiff contends defendants should be estopped to assert the defense of failure of consideration by reason of their failure to advise plaintiff they were not going to pay. Plaintiff asserts that the Nursery filed a bankruptcy proceeding, and if plaintiff had been apprised of defendants' claim, it would have exerted greater pressure on the Nursery to collect the obligation. Plaintiff claims defendants' inaction and silence constitute a sufficient basis to invoke an estoppel.

> "... in order for silence to work an estoppel, there must be a legal duty to speak, or there must be something willful or culpable in the silence which allows another to place himself in an unfavorable position by reason thereof...."[8]

■ The facts revealed by the record do not support plaintiff's claim. The date the Nursery filed bankruptcy is not disclosed; however, defendants in their answer alleged it was in the spring of 1969. The claimed legal duty of the defendants to speak is not established. According to plaintiff's records, the last payment received from defendants was in January, 1967. Plaintiff sent defendants a series of letters, first demanding payment and later threatening legal action. The first letter was dated February 8, 1967; the second was dated October 12, 1967; and the third was dated November 21, 1967. On May 24, 1968, plaintiff threatened to employ Dunn and Bradstreet Collection Services. On June 27, 1968, counsel for defendants informed Dunn and Bradstreet that they denied all liability on the notes, and advised plaintiff to seek payment from the Nursery. The evidence further indicated that the agreements between plaintiff and the Nursery provided that in the event any maker was forty-five or more days past due in payment, the note would be automatically

---

**6.** § 44–1–25 provides: "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration, and every person whose signature appears thereon, to have become a party thereto for value."

**7.** 12 Am.Jur.2d, Bills and Notes, § 1178, p. 202. It should be observed that if the notes were negotiable instruments, to overcome the statutory presumption of consideration, defendants would have to prove in this case, where there was a partial failure of consideration, the extent thereof. Section 44–1–29 provides that partial failure of consideration is a defense pro tanto, whether the failure is an ascertained and liquidated amount or otherwise. See *Cameron v. Sisson*, 74 Ariz. 226, 246 P.2d 189 (1952); *Roberts v. Boydston*, 186 Okl. 336, 97 P.2d 898 (1940).

**8.** *Utah State Building Commission v. Great American Indemnity*, 105 Utah 11, 29, 140 P.2d 763; *French v. Johnson*, 16 Utah 2d 360, 361, 401 P.2d 315 (1965).

repurchased by the Nursery. Plaintiff could have averted loss by enforcing its agreement with the Nursery requiring re-purchase of the delinquent notes. Under the circumstances, the failure of defendants to respond to plaintiff's letters demanding payment did not establish a basis to invoke an estoppel.[9]

CROCKETT, C. J., and HALL, WILKINS and STEWART, JJ., concur.

---

**9.** *Grant Investment Company v. Fuller & Company*, 171 Colo. 86, 464 P.2d 859, 861 (1970).