TOMPKINS PRINTING EQUIPMENT
COMPANY, Plaintiff,

v.

ALMIK, INC., a Michigan
Corporation, Defendant.

ALMIK, INC., a Michigan Corporation,
Counter–Plaintiff,

v.

TOMPKINS PRINTING EQUIPMENT
COMPANY, Counter–Defendant.

ALMIK, INC., a Michigan
Corporation, Cross–Plaintiff

v.

Ronald J. McINNES, Thomas McInnes,
Debtor, American Typesetting & Graff-
ic Services, Inc., a Michigan Corpora-
tion and Paul Borock, Trustee, United
States of America Department of Trea-
sury, Internal Revenue Service, Cross–
Defendant.

Civ. A. No. 88–CV–72711–DT.

United States District Court,
E.D. Michigan, S.D.

Nov. 30, 1989.

Timothy R. Sinclair, Grosse Pointe
Farms, Mich., for plaintiff.

Charles Greene, IRS, Washington, D.C.,
Timothy Miller, Detroit, Mich., Ira S. Aus-
lander, Southfield, Mich., Paul H. Stein-
berg, Southfield, Mich., for defendant.

OPINION

DUGGAN, District Judge.

This is an interpleader action removed
from state court. Presently pending are
motions for summary judgment filed by
each of the remaining claimants to the pro-
ceeds of a promissory note, the United
States (hereinafter "the government")
Tompkins Printing Equipment Company
("Tompkins"), and Paul Borock ("the trust-

ee"). Such claimants have stipulated to the following facts.

Thomas McInnes ("McInnes"), doing business as Speedy Printing Centers ("Speedy") purchased equipment from Tompkins. Tompkins retained a security interest in such equipment. Subsequently, the assets of Speedy and American Typesetting and Graphics, Inc. ("American Typesetting", over which McInnes served as president)—including the equipment referred to above—were sold to Almik, Inc. ("Almik"). As a condition of the sale to Almik, Tompkins released its previously held security interest. Furthermore, in consideration for the assets received, Almik gave, in part, a promissory note payable to American Typesetting in the amount of $33,000 dated December 23, 1985. (See exhibit "A", attached to this opinion.)

By a document dated December 27, 1985, Tompkins maintains "it received a partial assignment of the promissory note...." (Stipulation # 9). Such document recites in relevant part:

It is hereby agreed that the payments of the promissory note payable by Almik, Inc. to American Typesetting are to be paid directly to Tompkins Printing Equipment to satisfy the debt owed to Tompkins by Tom McInnes dba Speedy Printing Center of Bloomfield North.

See Exhibit "B", attached hereto. Tompkins, however, never took physical possession of the note. On May 6, 1987, the government "filed a notice of federal tax lien against [American Typesetting] in the amount of $10,253.55 with the Michigan Secretary of State." (Stipulation # 13). One week later another notice against American Typesetting in the same amount was filed with the Oakland County Clerk, Register of Deeds. On June 2, 1987, the government served a notice of levy on Almik for the $13,130.05 tax delinquency of American Typesetting.[1]

By agreement of counsel, Almik's obligations under the promissory note have been satisfied with its deposit of $20,000 with the Court. The Court, in turn, must determine who, among the remaining claimants, is entitled to this amount or any part thereof.

In essence, the government argues (as does the trustee[2] who incorporates the government's argument)[3] that it has priority over the *unperfected* security interest of Tompkins. *See J.D. Court, Inc. v. U.S.*, 712 F.2d 258 (7th Cir.1983), cited by the government, where the court wrote:

[T]he holder of a security interest in a taxpayer's property will prevail against a government tax lien on the same property if the security interest "attaches" *and is perfected before the government files its notice of tax lien ....*

*Id.* at 261 (emphasis added; footnotes omitted).

Central to the government's position, then, is the suggestion that Tompkins can claim no greater interest in the note than that of a secured creditor *i.e.*, a "security interest." It thus dismisses Tompkins' contention that Tompkins received a partial assignment of the promissory note. In the government's view, "the Uniform Commercial Code does not permit assignment of negotiable instruments." Brief in support, at page 4 (*citing McIlroy Bank v. First National Bank of Fayetteville*, 10 U.C.C. 1111 (Ark.S.Ct. 1972)).

Tompkins submits that the government's position is misdirected:

By arguing that the [government] has a superior claim to the funds in escrow, [it]

---

1. As indicated in the declaration of Larry P. Bergquist, an Internal Revenue Service agent, the accrued tax liability (including interest and penalties) of American Typesetting is $17,323.26 as of August 30, 1989. See the attachment to the government's motion. This figure is not reflected in the parties' written stipulation.

2. McInnes filed for bankruptcy and American Typesetting, McInnes' "alter ego" according to the trustee, no longer exists.

3. Indeed, the parties' written stipulation provides:

If the [government] prevails in this action, the balance remaining from the $20,000.00, if any, after the [government] has been fully paid, shall be paid to Paul Borock, trustee for [the bankrupt estate].

Stipulation # 19.

has sought to shift the Court's focus to a "priority" question. The [government] ignores completely the thrust of Tompkins' claim which is that the assignment of proceeds is tantamount to a sale. As such, the Court need not address the Federal priority question, as the assignment/sale was complete at inception and Tompkins' rights as well as the payments received predate the [government's] lien by eighteen months.

Reply brief at 2. Thus, as construed by this Court, Tompkins' argument, in effect, rejects the "security interest" characterization urged by the government. Simply put, Tompkins suggests that the "partial assignment" *satisfied* the antecedent debt owed by McInnes, not merely *secured* it.

■ In this Court's opinion, the government's position that an assignment of a negotiable instrument is without legal effect is not correct. Under the Uniform Commercial Code ("U.C.C." or "Code"), an assignment of a negotiable instrument (as distinguished from proper negotiation) will not permit the assignee (transferee) to be a *holder in due course*. The Uniform Commercial Code does not state that the assignee (transferee) obtains no rights in the debt assigned. Nor does case law support any such proposition. In fact, the U.C.C. specifically refers to the term "partial assignment," in discussing a holder's attempt to negotiate less than the entire balance remaining on the negotiable instrument. Section 3–202(3) states that any attempt to negotiate less than the full amount remaining "... operates only as a partial assignment." Such language clearly suggests to this Court that the Code recognizes that there can be an assignment of a portion of a debt evidenced by a negotiable instrument. Therefore, even if the document executed on December 23, 1985 (exhibit A), is considered to be a negotiable instrument, there is no legal prohibition against assigning a portion of the indebtedness evidenced by such negotiable instrument.

■ The Court, in the preceding paragraph, used the phrase "even if [it] is considered to be a negotiable instrument" because the Court is troubled by the stipulation of the parties that the promissory note involved (exhibit A) is a negotiable instrument. (See stipulation of facts, # 6). Such document is not and cannot become, by stipulation of the parties, a negotiable instrument. A document may be a negotiable instrument *only* if it meets the requirements listed in the U.C.C. See U.C.C. § 3–104. Among other requirements, it is absolutely essential to negotiability that a document be "payable to order" or "payable to bearer". U.C.C. § 3–104(1)(d). See also, Hawkland and Lawrence, U.C.C. series, § 3–110:01 (art. 3) where the authors write: "An instrument to be negotiable within Article 3 must be payable either to order or to bearer." The document at issue here (exhibit A) does not satisfy this requirement.

The rationale for such requirement was set forth by Hawkland and Lawrence as follows:

> The issuance of a negotiable instrument imposes the risk on the obligor that the instrument will be acquired by a holder in due course who will take free of any defenses of the obligor. The issuance of a non-negotiable instrument does not subject him to this risk. To insure that an obligor will not issue a negotiable instrument unintentionally, certain words of negotiability must be used which are intended to signal to the obligor that he may be issuing a negotiable instrument. Use of these words, also enables a potential purchaser to determine whether the instrument is negotiable. These words of negotiability fall into two categories: "payable to order" and "payable to bearer".

*Ibid.* (Footnotes omitted.)

If the Court does not construe the instrument involved as a negotiable instrument, despite the "stipulation" of the parties, then the Court need not concern itself with the government's argument which is premised on the instrument's negotiability. The Court does not believe it is bound to accept a "stipulation" of the parties amounting to a legal conclusion where, in this Court's opinion, such legal conclusion is clearly wrong. And in this Court's opinion, the

parties "stipulation" that the promissory note herein involved is a negotiable instrument is an incorrect legal conclusion. The Court therefore chooses not to be bound by such a mistaken "stipulation of fact".

Whether the Court considers the instrument a negotiable instrument (whose *negotiability* was destroyed at the time of the assignment of a portion of the indebtedness covered by the note) or not, the Court must also address the issue of whether the assignment on December 27, 1985 was an assignment for security purposes or, as Tompkins contends, was an outright assignment, the effect of which was to discharge any further obligation on the part of McInnes to pay Tompkins.

The Court is aware of no law that would prohibit an assignment to Tompkins (exhibit B) of a portion of the indebtedness evidenced by the promissory note of December 23, 1985. (Indeed, the court in *Schied v. Shields*, 269 Or. 236, 524 P.2d 1209 (1974), quoting approvingly from a treatise, wrote: "'A promissory note, like an ordinary chose in action, may be transferred by an assignment without the actual delivery of the note.'" *Id.* 524 P.2d at 1210 (quoting Britton, *Bills* and *Notes* (2d ed) 120, § 50).) Based on the information presented to this Court, moreover, both the assignor (McInnes) and the obligor (Almik) considered the promissory note assignable.

■ Notified of the "assignment", Almik made payments directly to Tompkins apparently with the approval and consent of McInnes. The Court is further informed by Tompkins that Judge Cooper of the Oakland County Circuit Court has determined that exhibit "B" (attached) evidences a legally enforceable assignment. This Court has no reason to conclude that such document is anything other than what it purports to be, *i.e.*, an assignment of the monies due from Almik to McInnes. Though this Court concludes that an assignment was executed, a conclusion that such assignment was intended for security, as the government maintains, or to satisfy an antecedent debt, as Tompkins argues, *cannot* be reached.

While the government contends that such assignment was for "security purposes", the government offers no evidence to support such claim. The document itself recites that the assignment of the payments due under the promissory note are to be paid directly to plaintiff "... to satisfy the debt owed to Tompkins by Tom McInnes, d/b/a Speedy Printing Center of Bloomfield North." The document does not state that such document is being given for security purposes. Nor is there any evidence that the parties treated or considered this assignment as a "security interest", *e.g.*, by taking the appropriate steps required under Article 9 of the U.C.C. to perfect a security interest. Similarly, plaintiff has not furnished this Court with an affidavit in support of its claim that the document was an outright assignment. Plaintiff's *attorney* has argued such point. But the brief filed on behalf of the attorney, unaccompanied by an affidavit, is not sufficient, in this Court's opinion, to meet the requirements of a motion for summary judgment under Rule 56. Plaintiff has also referred to "... the ruling of Judge Cooper" with the accompanying statement that "... Plaintiff's counsel will furnish the operative portion when received...." Plaintiff's brief in support of motion, at 2. The Court has never received any pleadings, order, or transcript of any proceedings relating to "... the ruling of Judge Cooper."

In short, pending before the Court are cross-motions for Summary Judgment. By filing such motions, the parties have indicated that they do not believe there is any genuine material issue of fact that is in dispute. This Court disagrees. Although the parties have stipulated to many facts which they deem to be material (including one "fact" which, as discussed earlier, the Court considers an *erroneous legal conclusion*), the parties have not stipulated as to whether or not the assignment of December 27, 1985 was intended to be an outright assignment in satisfaction of the debt or an assignment for security purposes. This issue is crucial to this Court's determination and remains unresolved. For the reasons set forth above, this Court believes that a summary judgment is inappropriate at this

time. Therefore, the motions for summary judgment must be denied. A trial· and/or some other appropriate type of evidentiary hearing will be necessary for this Court to make a final ruling.

*a a β*
($13,000.00)

**EXHIBIT A**

Dated: Dec. 23 98

### INSTALLMENT NOTE

FOR VALUE RECEIVED, the undersigned promises to pay to AMERICAN TYPE-SETTING & GRAPHIC SERVICES, INC., a Michigan corporation, at a place so designated by the Payee, the principal sum of ~~Thirteen~~ *a a β THIRTY THREE* Thousand ($13,000.00) Dollars with interest thereon at nine percent (9%) per annum in installments as follows: $ *530.94* in eighty-four (84) equal monthly installments, beginning thirty (30) days after closing and due on the same day of the month every month thereafter until paid in full.

In the event of default in the payment of any of the installments as herein provided, the holder of this note may give thirty (30) days notice and demand for cure of this default then declare the entire principal sum then unpaid, together with the accrued interest thereon due and payable.

ALMK, INC., a Michigan corporation

Dated: Dec. 23, 1985

By: *Alfred A. Bsharah Sr.*
ALFRED S. BSHARAH

EXHIBIT B

# TOMPKINS PRINTING EQUIPMENT CO.

**REPRESENTING LEADING EQUIPMENT MANUFACTURERS**

*Manufacturers • Distributors*

1040 W. GRAND BLVD. ● DETROIT, MICHIGAN 48208 ● (313) 894-2222

December 27, 1985

It is hereby agreed that the payments of the promissory note payable by Almik, Inc. to American Typesetting are to be paid directly to Tompkins Printing Equipment to satisfy the debt owed to Tompkins by Tom McInnes dba Speedy Printing Center of Bloomfield North.

_____
Thomas McInnes

_____
Barbara Stevenson, Witness