**2017 UT App 139**

## THE UTAH COURT OF APPEALS

JACQUELYNN D. CARMICHAEL AND MEGAN M. MOSS,
Appellees,
*v.*
KRAIG T. HIGGINSON AND MARK BURDGE,
Appellants.

Opinion
No. 20160211-CA
Filed August 3, 2017

Third District Court, Salt Lake Department
The Honorable Royal I. Hansen
No. 140907046

Stephen Quesenberry and Mark R. Nelson, Attorneys
for Appellants

Richard H. Johnson II, D. Matthew Moscon, and
Landon A. Allred, Attorneys for Appellees

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES J. FREDERIC VOROS JR. and STEPHEN L. ROTH
concurred.[1]

CHRISTIANSEN, Judge:

¶1    Kraig T. Higginson and Mark Burdge appeal the district
court's grant of summary judgment in favor of Jacquelynn D.
Carmichael and Megan M. Moss (the Morton Estate). We affirm
and remand to the district court for the limited purpose of
calculating reasonable attorney fees incurred on appeal.

---

1. Judges J. Frederic Voros Jr. and Stephen L. Roth participated
in this case as members of the Utah Court of Appeals. They
retired from the court before this decision issued.

BACKGROUND

¶2    Higginson was friends with James Morton for several years. In early 2006, Higginson, who was then the CEO of Raser Technologies, Inc., found himself in personal financial trouble and asked Morton for help. On January 24, 2006, Morton sent instructions to his bank to wire $491,000 to Higginson. Morton's bank wired the money to Higginson's bank account the next day. According to Higginson, he "agreed to repay Morton contingent on Higginson selling his Raser stock for a large profit." Raser eventually filed for bankruptcy, and Higginson was unable to sell his Raser stock.

¶3    Higginson and Morton occasionally discussed the money via email. For example, in December 2006, Higginson sent Morton an email stating, "I also need to get 'squared up' on the $ I owe you. I haven't forgotten . . . and you will get paid." (Ellipsis in original.) In an April 2008 email, Morton asked an associate of his to inquire about the "+/- $500K" he had "loaned [Higginson] a couple of years ago to close on his house." A few days later, Higginson emailed Morton, stating:

> Things are going great. Should be able to get the [Raser] stock up nicely soon, **and get you paid back**. You were truly a life saver this past year. Thanks for the patience. I have asked Stan Kimball to prepare a Note . . . just in case I get run over by a bus . . . you would get paid.

(Emphasis and ellipses in original.)

¶4    In September 2008, Mark Burdge[2] emailed Morton regarding the money:

---

2. The parties dispute whether Burdge was Higginson's personal assistant or business associate. Burdge's relation to Higginson is irrelevant for purposes of this appeal.

[C]an I get the details of the loan that [Higginson] owes you? I'm trying to tidy up his accounting and he indicated he has an outstanding obligation to you in excess of $500,000.00. I need dates, interest, amount advanced etc. and any other loan documents or memos if you have them.

Morton responded to Burdge's email as follows:

As far as the loan to [Higginson] goes, Stan Kimball has asked me to put it in the form of a demand note. The 491K was transferred . . . to [Higginson] by me on [January 24, 2006]. I agreed to have it accrue interest at 5%, compounding annually. If for any reason the terms are not acceptable to [Higginson], let me know and we'll go back to the drawing board.

¶5 On December 31, 2008, Higginson executed a demand note (the Demand Note) in favor of Morton. The Demand Note provided:

FOR VALUE RECEIVED, I, Kraig T. Higginson, the undersigned ("Borrower"), promises to pay to James E. Morton ("Lender"), or his designee, the sum of Four Hundred Ninety One Thousand Dollars, together with interest thereon at the rate of five percent (5%) per annum, compounded annually. The entire unpaid principal and accrued interest thereon shall become immediately due and payable on demand by the holder hereof. This Note originated on January 24, 2006 with the accrual of interest commencing as of said date and continuing until paid.

The Demand Note also stated, "This instrument constitutes the entire agreement of the parties and may not be modified or altered except by an instrument in writing executed by both of the parties." Lastly, Higginson, as the borrower, agreed to "pay

all costs and expenses, including reasonable attorney's fees, in the event of a default under this Note." Higginson provided a signed copy of the Demand Note to Morton but retained the original.

¶6    Morton died in May 2009. In 2013, the Morton Estate first contacted Higginson about the Demand Note. Over the next eighteen months, the Morton Estate tried, to no avail, to collect on the Demand Note. In October 2014, the Morton Estate filed a complaint against Higginson, alleging breach of contract and, in the alternative, promissory estoppel and unjust enrichment. The Morton Estate later filed an amended complaint adding Burdge as a defendant. In addition to the original claims against Higginson, the amended complaint included alternative claims for conversion and fraud against both Higginson and Burdge (collectively, Appellants), as well as an alternative claim for tortious interference against Burdge alone.

¶7    Both parties filed motions for summary judgment. The district court denied Appellants' motion and granted the Morton Estate's motion on its breach of contract claim, concluding that the Demand Note constituted an enforceable contract between Higginson and Morton. The court also concluded that the provisions of Article 3 of the Uniform Commercial Code as adopted by Utah (the UCC), *see* Utah Code Ann. §§ 70A-3-101 to -607 (LexisNexis Supp. 2016), were "not imposed on the Demand Note," but that even if they were, the Morton Estate had substantially complied with those provisions. Because the court granted the Morton Estate's motion for summary judgment on the breach of contract claim, the court concluded that "the other causes of action pled by the [Morton Estate] . . . in the alternative" were moot. The court entered a money judgment against Higginson in the amount of $794,247.27 and awarded attorney fees and costs to the Morton Estate.[3]

---

3. The district court did not enter a money judgment against Burdge.

ISSUE AND STANDARD OF REVIEW

¶8 On appeal, Appellants contend that the district court "improperly granted summary judgment in favor of the Morton Estate, and improperly denied summary judgment to [Appellants]." "[W]e review a district court's grant of summary judgment for correctness[.]" *Poulsen v. Farmers Ins. Exch.*, 2016 UT App 170, ¶ 8, 382 P.3d 1058. "Summary judgment is only appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; *see also* Utah R. Civ. P. 56(a).

ANALYSIS

¶9 Appellants contend that the district court erred in denying their motion for summary judgment and in granting the Morton Estate's motion for summary judgment.

¶10 The district court first concluded that the Demand Note constituted an enforceable contract[4] between Higginson and Morton and that Higginson had breached that contract.[5] More specifically, the court found that it was undisputed that (1) "Higginson and Morton entered into a contract," i.e., the Demand Note; (2) the "Demand Note requires Higginson to pay Morton $491,000 plus 5 percent interest annually calculated from January 24, 2006 until the amount is repaid"; (3) "Morton performed his obligation under the Demand Note by delivering $491,000 to Higginson, which Higginson received"; (4) after

---

4. "The elements essential to contracts . . . includ[e] offer and acceptance, competent parties, and consideration." *Golden Key Realty, Inc. v. Mantas*, 699 P.2d 730, 732 (Utah 1985).

5. "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 14, 20 P.3d 388.

Morton's death, the Morton Estate sent a letter to Higginson on September 5, 2014, "demanding repayment in full and providing a copy of the Demand Note"; (5) "Higginson refused to repay the Demand Note"; and (6) the Morton Estate was damaged as a result. The court further concluded that the Demand Note contained a valid integration clause "indicating that it represents the entire agreement between Morton and Higginson," that the Demand Note contained no reference to any conditions that would excuse Higginson from repayment, and that the language in the Demand Note was unambiguous. In light of the integration clause and "the clear language of the Demand Note," the court declined to consider any parol evidence.

¶11   The court also provided an alternative basis for its grant of summary judgment in favor of the Morton Estate:

> 14. The provisions of the Uniform Commercial Code—Negotiable Instruments (Utah [Code] §§ 70A-3-101, *et seq.*) ("UCC 3") are not imposed on the Demand Note.
>
> 15. If the provisions of UCC 3 were imposed on the [Morton Estate]'s enforcement of the Demand Note against Higginson, the Court finds that the [Morton Estate] has substantially complied with those provisions.

¶12   On appeal, Appellants do not contest the primary basis for the district court's decision to grant summary judgment to the Morton Estate; i.e., the Demand Note constituted an enforceable contract. Instead, Appellants' arguments focus on the alternative basis for the district court's grant of summary judgment under Article 3 of the UCC. Specifically, Appellants contend that Higginson "never issued the original Demand Note to Morton" pursuant to the strictures of UCC section 3-105, and that the district court "incorrectly and improperly concluded

Higginson issued the Demand Note to Morton."[6] *See* Utah Code Ann. § 70A-3-105 (LexisNexis Supp. 2016) (discussing the issuance of instruments). Appellants also contend that the Morton Estate failed to comply with the presentment requirements set forth in UCC section 3-501. *See id.* § 70A-3-501 (discussing the presentment requirements).

¶13 Appellants' issuance and presentment arguments presuppose that the Demand Note is a negotiable instrument. *See id.* § 70A-3-104 (defining "negotiable instrument"). In doing so, Appellants assert, without analysis, that the Demand Note "fits within [the] definition" of "negotiable instrument" and is therefore governed by Article 3 of the UCC.[7] However, as

---

6. The Morton Estate correctly observes that the district court never made a specific determination regarding issuance. Therefore, according to the Morton Estate, "Appellants' argument must be understood as claiming that the [district] court's finding that all UCC 3 requirements were 'substantially complied with' includes a finding of issuance."

7. In an apparent attempt to persuade this court that the Demand Note is a negotiable instrument, Appellants cite statements made by the Morton Estate in the district court indicating that the Morton Estate believed the Demand Note to be a negotiable instrument governed by Article 3 of the UCC. However, "[w]hen determining negotiability, only the instrument in question should be examined." *First Fed. Sav. & Loan Ass'n of Salt Lake City v. Gump & Ayers Real Estate, Inc.*, 771 P.2d 1096, 1097 (Utah Ct. App. 1989); *see also Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, 699 (3d Cir. 1995) ("How the parties regard or characterize the instrument is immaterial."); *Tompkins Printing Equip. Co. v. Almik, Inc.*, 725 F. Supp. 918, 920–21 (E.D. Mich. 1989) (observing that the court was not bound to accept the parties' stipulation that the instrument involved was a negotiable instrument where "such legal conclusion is clearly wrong").

previously discussed, the district court determined that the Demand Note was not a negotiable instrument governed by Article 3 of the UCC. And although the court did not explain its reasoning, the court's ruling appears to be correct. At the very least, it is not so obviously incorrect that Appellants may forgo challenging it on appeal.

¶14 "When determining negotiability, only the instrument in question should be examined." *First Fed. Sav. & Loan Ass'n of Salt Lake City v. Gump & Ayers Real Estate, Inc.*, 771 P.2d 1096, 1097 (Utah Ct. App. 1989); *see also Calfo v. D.C. Stewart Co.*, 717 P.2d 697, 700 (Utah 1986) ("[A]n instrument's negotiability must be determinable from what appears on its face and without reference to extrinsic facts."). For a writing to constitute a negotiable instrument under Article 3 of the UCC, it must satisfy the requirements set forth in Utah Code section 70A-3-104(1)—the writing must be "an unconditional promise or order to pay a fixed amount of money," upon demand or at a definite time, and be "*payable to bearer or to order at the time it is issued or first comes into possession of a holder*." Utah Code Ann. § 70A-3-104(1) (emphasis added). A note[8] is "payable to bearer" if it:

> (a) states that it is payable to bearer or to the order of bearer or otherwise indicates that the person in possession of the promise or order is entitled to payment;

> (b) does not state a payee; or

> (c) states that it is payable to or to the order of cash or otherwise indicates that it is not payable to an identified person.

---

8. "An instrument is a 'note' if it is a promise[.]" Utah Code Ann. § 70A-3-104(5) (LexisNexis Supp. 2016).

*Id.* § 70A-3-109(1). A note "that is not payable to bearer is payable to order if it is payable to the order of an identified person, or to an identified person or order." *Id.* § 70A-3-109(2).[9]

¶15    In *First Investment Co. v. Andersen*, 621 P.2d 683 (Utah 1980), the two promissory notes at issue stated, in relevant part, "For value received, Robert Andersen of Nephi, Utah, promises to pay to Great Lakes Nursery Corp. . . . ." *Id.* at 684 (internal quotation marks omitted). Our supreme court observed that

---

9. The official comments to Article 3 section 104 of the Uniform Commercial Code explain the rationale for requiring a writing to contain certain "words of negotiability," i.e., "to order" or "to bearer," to qualify as a negotiable instrument:

> Total exclusion from Article 3 of other promises or orders that are not payable to bearer or to order serves a useful purpose. It provides a simple device to clearly exclude a writing that does not fit the pattern of typical negotiable instruments and which is not intended to be a negotiable instrument. If a writing could be an instrument despite the absence of "to order" or "to bearer" language and a dispute arises with respect to the writing, it might be argued that the writing is a negotiable instrument because the other requirements of subsection (a) are somehow met. Even if the argument is eventually found to be without merit it can be used as a litigation ploy. *Words making a promise or order payable to bearer or to order are the most distinguishing feature of a negotiable instrument and such words are frequently referred to as "words of negotiability."*

U.C.C. § 3-104 cmt. 2 (Am. Law Inst. & Uniform Law Comm'n 2014) (emphasis added); *see also J.R. Simplot Co. v. Sales King Int'l, Inc.*, 2000 UT 92, ¶ 40, 17 P.3d 1000 (observing that the official comments to the Uniform Commercial Code are persuasive authority in Utah).

"one of the requirements to qualify a writing as a negotiable instrument is that it contain the time-honored 'words of negotiability,' such as 'pay to the order' or 'pay to the bearer.'" *Id.* at 685–86 (citation omitted). "The mere promise to pay, absent the magic words 'payable to order or to bearer' renders the note nonnegotiable, and the liability is determined as a matter of simple contract law." *Id.* at 686. Thus, because "the notes were payable simply to the payee, and were not payable to the order of the payee or its order," the court concluded that the notes were "not negotiable instruments." *Id.*

¶16     Courts in other jurisdictions have also determined that the absence of certain "words of negotiability" render a note nonnegotiable. For instance, in *In re Stanley*, 514 B.R. 27 (Bankr. D. Nev. 2012), the court noted the importance of "words of negotiability" in flagging a note as a negotiable instrument:

> The use of "order" language is one of the primary distinctions between negotiable instruments and ordinary contracts. The words "or order" appearing after the name of the initial payee are often referred to as the "words of negotiability." These simple words empower the payee to order the maker to pay another person so named. By such an "order," usually in the form of an endorsement, the payee thus transfers the instrument to another, who takes the instrument with the identical power to transfer to another by a similar "order."

*Id.* at 37 n.19 (citation omitted). And in *Tompkins Printing Equipment Co. v. Almik, Inc.*, 725 F. Supp. 918 (E.D. Mich. 1989), the court explained the importance of the specific "words of negotiability" to contracting parties and potential successors:

> The issuance of a negotiable instrument imposes the risk on the obligor that the instrument will be acquired by a holder in due course who will take free of any defenses of the obligor. The issuance of

a non-negotiable instrument does not subject him to this risk. To insure that an obligor will not issue a negotiable instrument unintentionally, certain words of negotiability must be used which are intended to signal to the obligor that he may be issuing a negotiable instrument. Use of these words[] also enables a potential purchaser to determine whether the instrument is negotiable. These words of negotiability fall into two categories: "payable to order" and "payable to bearer".

*Id.* at 920 (citation and additional internal quotation marks omitted); *see also Sirius LC v. Erickson*, 156 P.3d 539, 542 (Idaho 2007) ("Notes payable simply to a specific payee, and not 'to the order of the payee' or 'to the payee or order,' are non-negotiable.").

¶17   The Demand Note at issue here lacks the words of negotiability necessary to qualify as a negotiable instrument. The Demand Note provides, in relevant part, "FOR VALUE RECEIVED, I, Kraig T. Higginson, the undersigned ('Borrower'), promises to pay to James E. Morton ('Lender'), or his designee, . . . ." Because the Demand Note "specifically identifies the person to whom payment is to be made," i.e., Morton, it is not payable to bearer. *See Sirius LC*, 156 P.3d at 542. Generally, a note "that is not payable to bearer is payable to order if it is payable to the order of an identified person, or to an identified person or order." Utah Code Ann. § 70A-3-109(2) (LexisNexis Supp. 2016). However, the Demand Note is not payable to order because it lacks the words of negotiability "to order" that are required under Utah Code section 70A-3-109(2). *See Sirius LC*, 156 P.3d at 542.

¶18   As previously discussed, "[t]he mere promise to pay, absent the magic words 'payable to order or to bearer' renders the note nonnegotiable." *First Inv. Co.*, 621 P.2d at 686; *see also Sirius LC*, 156 P.3d at 542 ("Notes payable simply to a specific

payee, and not 'to the order of the payee' or 'to the payee or order,' are non-negotiable."). Consequently, because the Demand Note is not "payable to bearer or to order," it is nonnegotiable.[10] *See* Utah Code Ann. § 70A-3-104(1)(a); *see also First Inv. Co.*, 621 P.2d at 686 (observing that liability on a nonnegotiable note "is determined as a matter of simple contract law"); *Sirius LC*, 156 P.3d at 543 (observing that a nonnegotiable promissory note "is governed by contract law").

¶19    Based on the foregoing, the district court's determination that the Demand Note was not a negotiable instrument and was thus not subject to the strictures of Article 3 of the UCC is, at the very least, plausible. That determination served as the predicate for the court's ultimate ruling that the Demand Note was an enforceable contract. On appeal, Appellants have not challenged the district court's determination that the Demand Note was an enforceable contract between Morton and Higginson other than to argue that because, in their view, the note was a negotiable instrument subject to unfulfilled requirements of the UCC, it was therefore not enforceable as a simple contract. Indeed, Appellants do not raise any non-UCC challenges to the enforcement of the Demand Note. Consequently, we affirm the

---

10. Appellants have not attempted to explain why the phrase "or his designee" should have the same legal meaning as "or order" in this case, and given the importance of designated "words of negotiability" in safeguarding the reliability of the concept of a negotiable instrument under the UCC, it seems unlikely that they could. *See generally* 2 White, Summers, & Hillman, *Uniform Commercial Code* § 18:4 (6th ed. 2016) ("More than any other symbols, the words 'order' and 'bearer' are supposed to put parties on notice that they are dealing with negotiable instruments. For this reason, courts have been slow to recognize substitutes for these symbols. The drafters of the 1990 revisions exempt certain checks from the 'payable to bearer or to order' requirement, . . . but otherwise, they continue the policy of discouraging alternate language in negotiable instruments.").

district court's grant of summary judgment in favor of the Morton Estate. *See Golden Meadows Props., LC v. Strand*, 2010 UT App 257, ¶ 17, 241 P.3d 375 (observing that an appellant cannot demonstrate that a district court erred if he or she "fails to attack the district court's reasons" for its decision); *see also Salt Lake County v. Butler, Crockett & Walsh Dev. Corp.*, 2013 UT App 30, ¶ 28, 297 P.3d 38 ("This court will not reverse a ruling of the [district] court that rests on independent alternative grounds where the appellant challenges only one of those grounds.").

¶20 Appellants next contend that the district court erred when it "disregarded the statute of limitations bar to the Morton Estate's remaining causes of action" for promissory estoppel, unjust enrichment, conversion, fraud, and tortious interference. In addressing the Morton Estate's remaining causes of action, the district court concluded:

> Because the Court has granted summary judgment to the [Morton Estate] on its breach of contract claim, and because the other causes of action pled by the [Morton Estate] were pled in the alternative, the Court does not need to reach those claims on their merits and deems them MOOT.

We agree with the reasoning of the district court: because we have affirmed the district court's grant of summary judgment in favor of the Morton Estate on the breach of contract claim, we need not address Appellants' arguments relating to the Morton Estate's alternative claims and the applicable statutes of limitations. *See generally Beehive Brick Co. v. Robinson Brick Co.*, 780 P.2d 827, 833 (Utah Ct. App. 1989) ("It is an established principle in both civil and criminal cases that this court need not analyze and address in writing each and every argument, issue, or claim raised and properly before us on appeal. Rather, the nature and extent of an opinion rendered by this court is largely discretionary with this court." (citation and internal quotation marks omitted)). Our affirmance of the district court's grant of

summary judgment on the breach of contract claim is dispositive of this appeal. *See id.*

¶21    Finally, the Morton Estate contends that it should be awarded its attorney fees and costs incurred on appeal. "When a party is entitled to attorney fees below and prevails on appeal, that party is also entitled to fees incurred on appeal." *Jordan Constr., Inc. v. Federal Nat'l Mortgage Ass'n*, 2017 UT 28, ¶ 71 (brackets, citation, and internal quotation marks omitted). The Morton Estate received attorney fees below and has prevailed on appeal. Accordingly, we award the Morton Estate its reasonable fees incurred in connection with this appeal in an amount to be determined by the district court on remand.


CONCLUSION

¶22    We conclude that Appellants have not demonstrated that the Demand Note was a negotiable instrument, and the district court's conclusion that "[t]he provisions of the [UCC] . . . are not imposed on the Demand Note" therefore stands. Appellants have not challenged the district court's determination that the Demand Note was an enforceable contract, and we therefore affirm the district court's grant of summary judgment in favor of the Morton Estate and award attorney fees on appeal to the Morton Estate.

¶23    Affirmed.

————————